## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

BEATRIX HEINRICH,

      Plaintiff,

      v.

ENDURANCE INTERNATIONAL GROUP
HOLDINGS, INC., JAMES C. NEARY,
JEFF FOX, ANDREA J. AYERS, DALE
CRANDALL, JOSEPH P. DISABATO,
TOMAS GORNY, PETER J. PERRONE,
CHANDLER J. REEDY, JUSTIN L.
SADRIAN, and ALEXI A. WELLMAN,

      Defendants.

---

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND

---

Plaintiff Beatrix Heinrich ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against Endurance International Group Holdings, Inc. ("Endurance" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the

"Proposed Transaction") of Endurance by Endure Digital Intermediate Holdings, Inc. ("Parent") and Endure Digital, Inc. ("Merger Sub"), a wholly-owned subsidiary of Parent. Parent and Merger Sub are beneficially owned by affiliates of Clearlake Capital Group, L.P. ("Clearlake").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business and has substantial operations in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Endurance common stock.

7.      Defendant Endurance, together with its subsidiaries, provides cloud-based platform solutions for small-and medium-sized businesses in the United States and internationally. The Company is incorporated in Delaware and maintains offices and data centers

2

in Colorado. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "EIGI."

8.      Defendant James C. Neary ("Neary") is Chairman of the Board of the Company.

9.      Defendant Jeff Fox ("Fox") is President, Chief Executive Officer, and a director of the Company.

10.      Defendant Andrea J. Ayers ("Ayers") is a director of the Company.

11.      Defendant Dale Crandall ("Crandall") is a director of the Company.

12.      Defendant Joseph P. DiSabato ("DiSabato") is a director of the Company.

13.      Defendant Tomas Gorny ("Gorny") is a director of the Company.

14.      Defendant Peter J. Perrone ("Perrone") is a director of the Company.

15.      Defendant Chandler J. Reedy ("Reedy") is a director of the Company.

16.      Defendant Justin L. Sadrian ("Sadrian") is a director of the Company.

17.      Defendant Alexi A. Wellman ("Wellman") is a director of the Company.

18.      Defendants Neary, Fox, Ayers, Crandall, DiSabato, Gorny, Perrone, Reedy, Sadrian, and Wellman are collectively referred to herein as the "Individual Defendants."

19.      Defendants Endurance and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

20.      On November 2, 2020, Endurance issued a press release announcing that it had entered into a definitive merger agreement to be acquired by affiliates of Clearlake in an all-cash transaction. Under the terms of the definitive agreement, affiliates of Clearlake would acquire all of the outstanding common shares of Endurance for $9.50 per share in cash. The press release

states, in pertinent part:

### Endurance International Group Announces Agreement to be Acquired by Clearlake Capital Group L.P. for $9.50 per Share

November 02, 2020 07:30 ET | **Source:** Endurance International Group Holdings, Inc.

BURLINGTON, Mass., Nov. 02, 2020 (GLOBE NEWSWIRE) -- Endurance International Group Holdings, Inc. ("Endurance" or the "Company") (Nasdaq:EIGI), a leading provider of cloud-based platform solutions designed to help small and medium-sized businesses succeed online, announced today that it has entered into a definitive merger agreement to be acquired by affiliates of Clearlake Capital Group L.P. ("Clearlake") in an all cash transaction valued at approximately $3.0 billion including outstanding indebtedness.

Under the terms of the definitive agreement, which has been unanimously approved by the members of the Endurance Board of Directors, affiliates of Clearlake will acquire all of the outstanding common shares of Endurance for $9.50 per share in cash.

\*       \*       \*

A special meeting of Endurance shareholders will be held promptly following the filing of a definitive proxy statement with the U.S. Securities and Exchange Commission (the "SEC"). Certain affiliates of Warburg Pincus and Goldman Sachs Private Equity Partners have entered into a voting agreement committing them to, among other things, vote approximately 36% of the outstanding shares of Endurance common stock in favor of adopting the acquisition agreement.

\*       \*       \*

The proposed transaction is expected to close in the first quarter of 2021 and is subject to approval by Endurance shareholders, along with the satisfaction of customary closing conditions (including antitrust regulatory clearance). Clearlake will finance the transaction with a combination of committed equity financing from the Clearlake funds and has secured committed debt financing for the proposed transaction, which is not subject to any financing condition. Upon completion of the acquisition, Endurance will become a wholly owned affiliate of Clearlake.

\*       \*       \*

Centerview Partners and Goldman Sachs are acting as co-financial advisors and WilmerHale as corporate counsel to Endurance.

4

J.P. Morgan, BofA Securities, Deutsche Bank Securities, and UBS Investment Bank provided committed debt financing, and alongside Rothschild & Co and Lazard acted as financial advisors to Clearlake. Sidley Austin LLP is serving as corporate/M&A counsel and Kirkland & Ellis LLP as financing counsel to Clearlake.

**About Endurance International Group**

Endurance International Group Holdings, Inc. (NASDAQ:EIGI) helps millions of small businesses worldwide with products and technology to enhance their online web presence, email marketing, business solutions, and more. The Endurance family of brands includes: Constant Contact, Bluehost, HostGator, and Domain.com, among others. Headquartered in Burlington, Massachusetts, Endurance employs over 3,800 people across the United States, Brazil, India and the Netherlands. For more information, visit: www.endurance.com.

Endurance International Group and the compass logo are trademarks of The Endurance International Group, Inc. Constant Contact, the Constant Contact logo and other brand names of Endurance International Group are trademarks of The Endurance International Group, Inc. or its subsidiaries.

**About Clearlake Capital Group**

Clearlake Capital Group, L.P. is a leading investment firm founded in 2006 operating integrated businesses across private equity, credit and other related strategies. With a sector-focused approach, the firm seeks to partner with world-class management teams by providing patient, long-term capital to dynamic businesses that can benefit from Clearlake's operational improvement approach, O.P.S.® The firm's core target sectors are technology, industrials and consumer. Clearlake currently has approximately $25 billion of assets under management and its senior investment principals have led or co-led over 200 investments. The firm has offices in Santa Monica and Dallas. More information is available at www.clearlake.com and on Twitter @ClearlakeCap.

21. On December 14, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22. The Proxy Statement, which recommends that Endurance shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the sales process leading up to the Proposed Transaction; (ii) Endurance's financial projections;

(iii) the financial analyses performed by Endurance's financial advisors, Centerview Partners LLC ("Centerview") and Goldman Sachs & Co. LLC ("Goldman"), in connection with their fairness opinions; and (iv) potential conflicts of interest involving Goldman.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Board of Directors; (iii) Opinion of Centerview Partners LLC; (iv) Opinion of Goldman Sachs & Co. LLC; and (v) Financial Forecasts.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the January 14, 2021 shareholder vote on the Proposed Transaction, Endurance shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

      **1.   Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

25.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

26.     On October 30, 2020, Party C submitted a proposal to acquire the Company for $8.75 per share. Clearlake proposed acquiring the Company for $8.90 per share. Party A submitted a proposal to acquire the Company for $9.16 per share, contingent on the Company granting exclusivity to Party A.

27.     Thereafter, Centerview and Goldman contacted each of Clearlake, Party A, and Party C by telephone, discussing with each bidder its capacity to raise its price. Clearlake and Party C each responded they were willing and able to raise their prices but needed guidance from the

Company as to the price level need to be granted exclusivity. Party A stated that its decision to increase its price to $9.16 per share "had been difficult and that it would not be able to increase its proposed price by more than a nominal amount."

28.     Later on October 30, 2020, the Board convened to discuss Centerview's and Goldman's calls with each of Clearlake, Party A, and Party C. After discussion, the Board "determined that Party A was not expected to significantly increase its proposed price given its prior communications with the Company's financial advisors[.]" The Board determined that "Clearlake and Party C should be informed that it was likely that the board of directors would grant a short period of exclusivity to a participant that would increase its price to $9.50 per share."

29.     Later that day, Clearlake raised its proposed price to $9.50 per share. Party C made a best and final offer of $9.25 per share. Clearlake and the Company subsequently entered into an exclusivity agreement.

30.     On November 1, 2020, the Company and Parent executed the merger agreement.

31.     The Proxy Statement fails to adequately disclose the rationale and basis for the Board's determination "that Party A was not expected to significantly increase its proposed price[.]" Further, the Proxy Statement fails to disclose the "nominal amount" by which Party A may have been willing to increase its October 30, 2020 proposed offer. This information is material in light of the fact that the Board determined that "Clearlake and Party C [but not Party A] should be informed that it was likely that the board of directors would grant a short period of exclusivity to a participant that would increase its price to $9.50 per share." The decision to inform Clearlake and Party C of potential exclusivity, but not Party A, is suspicious because, at the time, Party A's offer of $9.16 per share was greater than Clearlake's offer of $8.90 per share and Party C's offer of $8.75 per share. Of these offers, Party A's offer was the closest to Endurance's threshold for

exclusivity ($9.50 per share) and just approximately 3.5% shy of Endurance's threshold for exclusivity—the "nominal amount" that Party A may have been considering.

32.     The aforementioned information is necessary in order for the Company's shareholders to evaluate the fairness of the Proposed Transaction, particularly as compared to a potential transaction with Party A.

33.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning Endurance's Financial Projections**

34.     The Proxy Statement omits material information concerning Endurance's financial projections.

35.     The Proxy Statement provides that, "in connection with the evaluation of a possible transaction, [Endurance] provided certain projections to [its] directors and to prospective bidders, including Clearlake, Party A, Party C, and Party D, in connection with their due diligence review of the Company, as well as to [Endurance's] financial advisors for their use in their analyses in connection with their opinions . . . These projections contained certain non-public financial forecasts that were prepared by [Endurance's] management" (the "Management Projections").

36.     With respect to the Management Projections, the Proxy Statement fails to disclose the following: (1) all line items underlying (i) Adjusted EBITDA, and (ii) unlevered free cash flow; (2) Endurance's net income projections; (3) a reconciliation of all non-GAAP to GAAP financial metrics; and (4) the date the Management Projections were prepared.

37.     When a company discloses non-GAAP financial metrics in a Proxy Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or

released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

38.     The disclosure of the aforementioned information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.   Material Omissions Concerning the Financial Advisors' Analyses

40.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview and Goldman.

41.     The valuation methods, underlying assumptions, and key inputs used by

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Dec. 18, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Centerview and Goldman in rendering their purported fairness opinions must be fairly disclosed to Endurance shareholders. The description of Centerview's and Goldman's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Endurance shareholders are unable to fully understand Centerview's and Goldman's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### A. *Centerview's Analyses*

42.     The Proxy Statement fails to disclose the following concerning Centerview's "*Selected Public Company Analysis*" and "*Selected Precedent Transactions Analysis*": (1) the individual multiples and financial metrics of the companies and transactions observed by Centerview in its analyses; and (2) the individual inputs and assumptions underlying the (i) 2021 Adjusted EBITDA multiple reference range of 7.0x to 8.5x, and (ii) LTM Adjusted EBITDA multiple reference range of 8.0x to 11.0x.

43.     The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.0% to 10.0%, (ii) forward Adjusted EBITDA multiples of 7.0x-8.5x, and (iii) implied perpetuity growth rates ranging from 0.6% to 2.9%; (2) all line items underlying the forecasted unlevered free cash flows of the Company over the period beginning October 1, 2020 and ending December 31, 2025; (3) the range of implied terminal values of the Company; (4) the Company Tax Assets; (5) the Company's net debt as of September 30, 2020; (6) the basis for applying a 3% year-over-year revenue growth rate and assuming an Adjusted EBITDA margin

of 29.3%; and (7) the number of fully diluted shares of the Company's common stock outstanding as of October 26, 2020.

44.    With respect to Centerview's "*Premia Paid Analysis,*" the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

45.    With respect to Centerview's "*Analyst Price Target Analysis,*" the Proxy Statement fails to disclose: (1) the individual price targets observed by Centerview in its analysis; and (2) the sources thereof.

**B.  *Goldman's Analyses***

46.    The Proxy Statement fails to disclose the following concerning Goldman's "*Selected Companies Analysis*" and "*Selected Transactions Analysis*": (1) the individual multiples and financial metrics of the companies and transactions observed by Goldman in its analyses; and (2) the individual inputs and assumptions underlying the range of multiples of 7.0x to 8.5x and of 8.0x to 11.0x.

47.    The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) range of multiples of 7.0x to 8.5x, and (ii) discount rate of 14%; (2) the Company's projected net debt as of December 31, 2020, 2021, 2022, and 2023; and (3) the number of fully diluted shares of the Company's common stock.

48.    The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis by Goldman Sachs*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.50% to 10.50%, (ii) multiples ranging from 7.0x to 8.5x, and (iii) perpetuity growth rates ranging from 1.1% to 3.4%; (2) all line items underlying the unlevered free cash flow for the Company for the period beginning October 1, 2020

and ending December 31, 2025; (3) the Tax Asset Projections; (4) the range of illustrative terminal values for the Company; (5) the Company's net debt as of September 30, 2020; and (6) the number of fully diluted shares of the Company.

### 4. Material Omissions Concerning Potential Conflicts of Interest Involving Goldman

49.     The Proxy Statement omits material information concerning potential conflicts of interest involving Goldman.

50.     The Proxy Statement fails to disclose whether and to what extent Goldman provided services to Endurance and/or its affiliates during the two years prior to the date of its fairness opinion, including the timing and nature of the services provided and the amount of compensation received or expected to be received by Goldman for providing such services.

51.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

52.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above,

which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

55.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

56.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

57.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

58.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, those Individual Defendants were directly involved in the making of the Proxy Statement.

63.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 18, 2020                    Respectfully submitted,

                                            **HALPER SADEH LLP**

                                            <u>/s/ Daniel Sadeh</u>
                                            Daniel Sadeh, Esq.
                                            667 Madison Avenue, 5th Floor
                                            New York, NY 10065
                                            Telephone: (212) 763-0060
                                            Facsimile: (646) 776-2600
                                            Email: sadeh@halpersadeh.com

                                            *Counsel for Plaintiff*